```
          IN THE UNITED STATES DISTRICT COURT
              WESTERN DISTRICT OF ARKANSAS
                  HOT SPRINGS DIVISION


HOLLY SELLS                                          PLAINTIFF

VS.                   CASE NO. 04-6156

MR. SPEEDY CAR CARE CENTER, JOHN HUFFER,
MIKE PORTER AND PORJOHN ENTERPRISES, LLC             DEFENDANTS
```

**MEMORANDUM OPINION**

On this 28th day of September 2005, there comes on for consideration Plaintiff's Motion for Attorneys' Fees and Costs (Doc. 46-47), Plaintiff's Motion for Equitable Relief in the Form of Front Pay in Lieu of Reinstatement (Doc. 48-49) and Plaintiff's Motion to Apportion Jury Award (Doc. 50-51). After reviewing the motion and materials submitted by plaintiff's attorney and considering the responses of the defendants (Docs. 52-55), and for the reasons reflected within this opinion, the Court finds that it is appropriate to award the plaintiff prospective equitable relief, and that said relief should be in the form of front pay as opposed to reinstatement. In addition, as Plaintiff was the prevailing party in this action and, pursuant to 42 U.S.C. § 2000e-5(k) and Ark. Code Ann. § 16-123-107, the court shall, in its discretion, award a reasonable attorneys' fee and costs. Finally, the damages awarded to Plaintiff by the jury in this matter shall be apportioned as set forth in this opinion. Also before the Court is the issue of

Separate Defendant Mike Porter's inconsistent testimony throughout the pendency of this matter.

I. **Background**

Plaintiff filed her complaint against Defendants alleging sexual harassment and retaliation in violation of Title VII and the Arkansas Civil Rights Act (ACRA) and the common law tort of outrage. After a two and a half day jury trial, the jury found in favor of the plaintiff on her discrimination and retaliation claims and awarded plaintiff lost wages and employment benefits in the amount of $60,000, other compensatory damages in the amount of $50,000 and punitive damages in the amount of $150,000.[1]

The parties were given additional time within which to submit briefs and any documentary evidence and/or affidavits relevant to the issues of reinstatement, front pay and allocation of damages. In addition, the plaintiff was directed to submit her application for attorneys' fees and costs with the defendants provided time to file any response.

II. **Allocation of Damages**

The jury found for Plaintiff on her sexual harassment claims and her retaliation claims under both Title VII and ACRA. However, the jury was not asked to apportion its damages awards

---

[1] At trial, the court granted the defendants' motion for a directed verdict with regard to the outrage claim.

between the four claims but rather to award lump sums of damages, as it found appropriate, for lost wages and fringe benefits, compensatory damages and punitive damages. Allocation of damages becomes an issue for some of Plaintiff's claims are subject to caps on damages awards.  Defendants contend the verdict should be set aside as it is vague or that the Court should remit the damages in accordance with the caps provided by law.  Plaintiff contends that the Court should allocate the damages to allow Plaintiff to recover the full amount of the jury award while avoiding any duplicative recovery.

Generally, the district court has discretion regarding how to allocate an award of damages with the general obligation to preserve lawful jury awards when possible. *See Passantino v. Johnson & Johnson Consumer Products, Inc.*, 212 F.3d 493 (9th Cir. 2000).  An allocation that would serve to reduce lawfully awarded damages would fail to respect the jury's verdict. *Id*.

Under Title VII, the sum of compensatory and punitive damages that may be recovered is subject to a cap of $50,000 for both Title VII claims.  *See* 42 U.S.C. § 1981a(a)(3)(b)(3).[2] This cap does not include back pay or front pay, nor does it apply to Plaintiff's claims under ACRA.  *See* 42 U.S.C. § 1981a(a)(3)(b)(2).  However, under ACRA, Plaintiff's sexual

---

[2] The parties agree that Defendants had more than 14 and fewer than 101 employees in each of 20 or more calendar weeks.

harassment claim is likewise subject to a cap of $50,000, which also includes compensatory and punitive damages, but excludes front pay or back pay. *See* Ark. Code Ann. § 16-123-107. Plaintiff's retaliation claim under ACRA is not subject to a cap on damages. *See* Ark. Code Ann. § 16-123-108.

Defendants contend that the jury's award is duplicative in nature and that it is impossible to determine whether the jury intended to award damages under Title VII or ACRA. Plaintiff's claims under Title VII and ACRA were not differentiated for trial purposes because they involved the same conduct and elements of proof. Accordingly, if the jury found Defendants liable under Title VII, it also found Defendants liable under ACRA.

It is clear that the jury intended for Plaintiff to receive its verdict of $260,000.00, but did not intend for Plaintiff to receive $260,000.00 on each of her claims. The amount awarded was the total amount of damages the jury found Plaintiff was entitled to receive. As the jury awarded damages without differentiating between the claims, the awards are effectively fungible. *See Passantino*, 212 F.3d at 509 (9th Cir. 2000)(citation omitted). Accordingly, to preserve that award, the Court finds it proper to allocate the jury award as follows:

**Compensatory damages:**

    Title VII claims:      $15,000

ACRA sexual harassment: $15,000

ACRA retaliation: $20,000

Total: $50,000

**Punitive Damages**:

Title VII claims: $35,000

ACRA sexual harassment: $35,000

ACRA retaliation: $80,000

Total: $150,000

The award of $60,000 in lost wages and fringe benefits is not subject to a cap under either Title VII or ACRA, therefore, the Court does not find it necessary to allocate that award among Plaintiff's successful claims.

## III. Front Pay vs. Reinstatement

Title VII allows a court to choose from a broad assortment of legal and equitable remedies when fashioning relief designed to make whole a plaintiff who has successfully demonstrated that he was subjected to intentional discrimination. 42 U.S.C. § 2000e-5. Reinstatement and front pay are two alternative remedies that may be awarded to compensate a prevailing plaintiff for lost future earnings. *See Ogden v. Wax Works, Inc.*, 29 F. Supp.2d 1003, 1007 (N.D. Iowa 1998). Reinstatement is a remedy specifically provided by section 2000e-5(g)(1) and is generally regarded by courts as the preferred remedy. *Cowan v. Strafford R-VI Sch. Dist.*, 140 F.3d 1153, 1160 (8th Cir.

1998). While front pay is not mentioned in either the Civil Rights Act of 1964 or the Civil Rights Act of 1991, federal trial courts and courts of appeal have long recognized that awarding front pay may be the preferred form of prospective equitable relief in situations where reinstatement is not feasible. *Ogden*, 29 F. Supp. at 1011 (citations omitted). "The choice of which prospective equitable remedy, if either, should be awarded in a given case is committed to the sound discretion of the trial court." *Id.* at 1007 (citations omitted). In the Eighth Circuit, a trial court has "discretion to consider all the circumstances in th[e] case when it determines what equitable relief may be appropriate." *Newhouse v. McCormick & Co.*, 110 F.3d 635, 641 (8th Cir. 1997)(quoting *Gibson v. Mohawk Rubber Co.*, 695 F.2d 1093, 1101 (8th Cir. 1982)).

Plaintiff submits that front pay is the appropriate equitable remedy in this case and asks the Court to consider all of the circumstances, including, but not necessarily limited to the following: (1) the current general manager, Rob Jones, testified at trial that Plaintiff had worn inappropriate clothing to work and flirted with Defendant Huffer; (2) Defendant John Huffer continues to work at Mr. Speedy on a daily basis; (3) Defendant Mike Porter remains involved in Mr. Speedy's business operations and testified at trial that Plaintiff had denied she was being sexually harassed by Huffer

and attempted to force Plaintiff to sign a document stating that the contact between Plaintiff and Huffer was consensual.

In response, Defendants submit that reinstatement rather than front pay is the proper remedy as Plaintiff continued to work for a period of time after the sexual harassment began and that any additional damage award would severely impair Defendants ability to operate their business.

After considering all of the facts and circumstances, including the likelihood of an appeal, the court finds that Plaintiff does harbor feelings of animosity toward Defendants Huffer and Porter. While Defendants deny animosity toward the plaintiff, hostility may well be directed at the plaintiff if she were to return to work. In addition, reinstatement would expose Plaintiff on a daily basis to Defendant Huffer who the jury found sexually harassed Plaintiff. The Court is hesitant to return plaintiff to such an environment. The fact that Plaintiff continued to work for some period of time after she alleged the sexual harassment began does little to convince the Court that reinstatement is an appropriate remedy in this case. Finally, the fact that a front pay award would further burden Defendants' business operation is not an appropriate factor for this Court to consider. For these reasons, the Court concludes that front pay is the preferable equitable remedy in this case.

With regard to the amount of the front pay to be awarded,

"the court must attempt to make the plaintiff whole, yet the court must avoid granting the plaintiff a windfall. The court cannot determine how long the plaintiff would have remained on the job, whether she would have left for a different, perhaps better-paying, job, or whether the plaintiff would have been dismissed for legitimate reasons." *Standley v. Chilowee R-IV Sch. Dist.*, 5 F.3d 319, 322 (8th Cir. 1993)(involving loss of employment case brought pursuant to 42 U.S.C. section 1983). In this case, Plaintiff's average weekly wage at Hot Springs Health & Fitness is $175.95 for a total of $9,149.40 per year. While employed at Mr. Speedy, Plaintiff earned $31,230.16 per year for a loss of $22,080.76 per year. The court finds that if Plaintiff had not been subjected to sexual harassment by John Huffer she would have successfully remained working as the car wash manager for Mr. Speedy. Therefore, we conclude that, in view of Plaintiff's age and work experience, it it is appropriate to award plaintiff front pay in the amount of $100,000 which the Court believes would be the minimal amount Plaintiff could have reasonably expected to earn during the remainder of her career at the car wash.

**IV. Reasonable Attorney's Fee**

The plaintiff bears the burden of "establishing an accurate and reliable factual basis for an award of attorneys' fees." *Philipp v. ANR Freight Sys., Inc.*, 61 F.3d 669, 675 (8th Cir.

1995)(*citing, Hensley v. Eckerhart*, 461 U.S. 424, 437, 103 S. Ct. 1933, 1941, 76 L. Ed.2d 40 (1983)).

The landmark case in relation to fixing fees is *Hensley v. Eckerhart*, 461 U.S. 424, 103 S. Ct. 1933, 76 L. Ed.2d 40 (1983).[3] In *Hensley*, the Supreme Court set forth a method to be utilized in calculating the amount of the fee award. The court is to first establish the lodestar amount--the number of hours reasonably expended multiplied by the applicable hourly rate for legal services. This is true regardless of the fee arrangement between the attorney and client. *Blanchard v. Bergeron*, 489 U.S. 87, 109 S. Ct. 939, 103 L. Ed.2d 67 (1989).

Fees should be reasonable regardless of the one footing the bill. In determining the amount of hours reasonably expended, the Supreme Court has indicated counsel are expected to exercise billing judgment and courts should exclude from the initial fee calculation hours that were not reasonably expended:

> Counsel for the prevailing party should make a good-faith effort to exclude from a fee request hours that are excessive, redundant, or otherwise unnecessary, just as a lawyer in private practice ethically is obligated to exclude such hours from his fee submission. "In the private sector, 'billing judgment' is an important component in fee setting. It is no less important here. Hours that are not properly billed to one's client also are not properly billed to one's *adversary* pursuant to statutory

---

[3]In *Hensley*, the Court was construing the provision for attorney fees found in 42 U.S.C. § 1988. However, "[t]he standards set forth in [the Hensley opinion] are generally applicable in all cases in which Congress has authorized an award of fees to a 'prevailing party.'" *Hensley,* 461 U.S. at 433, n.7.

-9-

authority."

*Hensley*, 461 U.S. at 434 (quoting *Copeland v. Marshall,* 641 F.2d 880, 891 (D.C. Cir. 1980)(en banc)). The reasonable rate is determined by reference to the market place. *Missouri v. Jenkins by Agyei*, 491 U.S. 274, 285, 109 S. Ct. 2463, 105 L. Ed.2d 229 (1989).

Once the lodestar amount has been determined, the court must consider whether other factors not considered in arriving at the lodestar amount suggest upward or downward adjustment to arrive at the appropriate fee award. *Hensley*, 461 U.S. at 434. The court should consider the following twelve factors in arriving at a final determination with regard to the amount of attorney's fees:

> (1) the time and labor required; (2) the novelty and difficulty of questions; (3) the skill requisite to perform the legal service properly; (4) the preclusion of employment by the attorney due to acceptance of the case; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the client or the circumstances; (8) the amount involved and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the "undesirability" of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases.

*Winter v. Cerro Gordo County Conservation Bd.,* 925 F.2d 1069, 1074 n.8 (8th Cir. 1991)(*citing, Hensley*, 461 U.S. at 430 n.3). *See also Casey v. City of Cabool, Missouri*, 12 F.3d 799 (8th Cir. 1993)(discussing opportunity cost of the lawyer's time and

relevant market).

The Supreme Court has indicated that "many of [the twelve] factors usually are subsumed within the initial calculation of hours reasonably expended at a reasonable rate." *Hensley,* 461 U.S. at 434, n.9 (citation omitted). The Eighth Circuit is in agreement: "The lodestar award (the product of reasonable hours multiplied by a reasonable rate) is presumptively a reasonable fee, and most factors relevant to determining the amount of a fee are subsumed within the lodestar." *Casey v. City of Cabool, Missouri*, 12 F.3d 799, 805 (8th Cir. 1993)(internal quotations and citations omitted).

Plaintiff's counsel seeks attorneys' fees in the amount of $58,097.50. This figure is based upon a total of 210.2 hours at $175.00 per hour for Diana Graham, 122.5 hours at $150.00 per hour for Christopher Parks and 23.5 hours at $125.00 per hour for their associate. Defendants sole argument with respect to Plaintiff's request for attorneys' fees is that "to attach attorney's fees and an award for costs on top of the judgment jeopardizes the continued operation of [Defendants'] small business." Doc. 53, p. 2. While this is no doubt a factor for the Court to consider, it's not the only factor. The Court must consider whether Plaintiff's request for attorneys' fees is reasonable.

**A. Claim Upon Which Plaintiff Did Not Prevail.**

At trial, the Court granted Defendants' motion for directed verdict with respect to Plaintiff's outrage claim. Plaintiff's attorney submits that the outrage claim was so intertwined with Plaintiff's other claims that to work on one was to work on the others as well. Further, Plaintiff's attorney submits that any time spent solely on the outrage claim was not included in the calculations submitted to the court.

**B.    Excessive Fees.**

Defendants have not stated that they believe Plaintiff's request for attorneys' fees is excessive. However, in correspondence to the Court dated September 15, 2005, Defendants noted that Plaintiff had a contingency fee arrangement with her counsel. Defendants also stated that "[a]ll discovery was cooperative in this matter and there were no motions to compel." Further, Defendants contended that the matter was "pending for less than nine (9) months and no continuances were sought." While all of these things may be true, they do not convince this Court that Plaintiff's requested attorneys' fees are excessive. This was a hard fought lawsuit, and Plaintiff's attorneys encountered a substantial risk of no recovery. Further, Plaintiff's counsel acknowledged they turned down other employment to pursue Plaintiff's case. (Doc. 47, p. 3).

**C.    Results Obtained and Other Factors**

"The product of reasonable hours times a reasonable rate

does not end the inquiry. There remain considerations that may lead the district court to adjust the fee upward or downward, including the important factor of the 'results obtained.'" *Hensley*, 461 U.S. at 434 (citations omitted). Neither side has argued and the Court does not find any considerations that would support either and upward or downward adjustment of Plaintiff's fee request. The lodestar amount is presumptively reasonable, and the Court finds it to be a reasonable amount.

Plaintiff also seeks reimbursement for costs in the amount of $4,100.05. The court finds the items requested are reasonable and recovery of the total amount of costs will be allowed.

**IV. Testimony of Mike Porter**

As indicated at the trial of this matter, the Court is concerned about the inconsistent and perhaps false testimony given by Defendant Porter at trial. A hearing is hereby scheduled for **Wednesday, December 14, 2005 at 10:00 a.m.** At that hearing Mr. Porter, both individually and on behalf of PorJohn Enterprises, LLC, shall show cause, if any, why an order should not be entered adjudging him guilty of criminal contempt for providing false testimony under oath. Mr. Porter is ordered to bring with him the Articles of Incorporation for PorJohn Enterprises, LLC, bearing a file mark from the Arkansas Secretary of State, as well as any other evidence tending to

show that he registered PorJohn Enterprises, LLC to do business as Mr. Speedy with the Garland County Clerk's Office.

**V.  Conclusion**

IT IS HEREBY ORDERED for the reasons stated, that plaintiff's motion to apportion the jury award is GRANTED with Plaintiff to recover compensatory damages in the amount of $50,000 and punitive damages in the amount of $150,000 allocated as set forth in this opinion.

IT IS FURTHER ORDERED, that plaintiff's motion for equitable relief in the form of front pay in lieu of reinstatement should be and hereby is GRANTED.  Accordingly, the plaintiff is awarded front pay in the amount of $100,000.

FINALLY, IT IS ORDERED that the plaintiff's motion for attorneys' fees and costs is GRANTED.  Accordingly, plaintiff is awarded $58,097.50 in attorneys' fees and $4,100.05 in costs for a total amount of $62,197.55.

A separate judgment shall be entered concurrently herewith.

IT IS SO ORDERED.

                                          /s/ Robert T. Dawson
                                          Robert T. Dawson
                                          United States District Judge